## KING ET AL. *v.* STATE.

[86 South. 339. No. 21095.]

1. CONSPIRACY. *To commit crime, or to do an unlawful thing, is a separate offense, and charge or proof of overt act is unnecessary.*

Under section 1084, Code 1906 (section 810, Hemingway's Code), an indictment for conspiracy to commit a crime, or to accomplish any unlawful purpose, or lawful purpose by any unlawful means, is a complete and separate offense, and it is not necessary to charge or prove an overt act.

2. CRIMINAL LAW. *Subsequent offense may be proved, to show criminal knowledge 'or intent.*

Under an indictment for conspiracy, a subsequent offense committed by the accused can be proved, for the purpose of showing criminal knowledge or intent.

3. CONSPIRACY. *Where evidence also shows an assault and battery, an instruction permitting a conviction thereon is error.*

Under an indictment for conspiracy, where the evidence of the state also proves an assault and battery, it. is error to instruct the jury that they can find the defendant guilty of assault and battery.

APPEAL from circuit court of Warren county.

HON. E. L. BRIEN, Judge.

E. L. King and three others were convicted on an indictment charging an unlawful conspiracy in making assault on and smearing the body of a named female, pursuant to which they unlawfully assaulted and tarred her, and they appeal. Reversed and remanded.

*Henry & Canizario,* for appellant.

We desire briefly to answer the learned attorney-general's argument as set out in his answer brief to-wit: First, that this honorable court should pass unnoticed (as is suggested by the attorney-general in his brief at page 3), our objection to certain assault instruction asked by

the state wherein he argues that the assault charged was merely surplusage. Second, that part of the learned attorney-general's brief regarding the omission of the verb "did" from the indictment of the charge of an actual assault, thereby denying to defendants the right to invoke the rule as announced in the case of *Cook* v. *State,* 72 Miss. 517, and followed by this court in a number of cases down to *Herron* v. *State,* 79 So. 289. The attorney-general draws a distinction and a difference between those cases and the case at bar. He says: "These cases differ from the one at bar in that this involves a misdemeanor and the others (Cook case and the others, *ibid*) were felony cases." Then he suggested that the charge of a consummated assault as laid in the indictment was merely surplusage and immaterial.

We desire to first answer the statement that the failure to employ and use the auxiliary verb "did" in the indictment does not render the indictment void and subject to be attacked at any time. It matters not in our opinion whether the charge in the indictment is one of felony or a misdemeanor. Certainly no such distinction has been drawn by this court or by any other court which has passed on this very question, and this court said in the Cook case that the verb "did" was the essence of the offense and renders the indictment void and subject to attack at any time. If the indictment therefore is void it is a mere nullity and it makes the indictment itself void rather than to fix the grade of the crime, and the indictment is thus fatally defective.

The second proposition suggested by counsel for the state, "the charge of a consummated assault (in the indictment) was mere surplusage and immaterial here, "is tantamount to a fatal admission on the part of the learned attorney-general that instructions No. 1 and No. 2 given to the state (record, page 11) are essentially erroneous, these two instructions advise the jury that without regard to the conspiracy side of the case they may convict the defendants of assault and battery. In other words the district at-

torney and the court below must have realized that the
state had failed to prove any conspiracy against the de-
fendants, to all of which we agree, so he asked the jury to
convict them of assault and battery regardless of the
conspiracy charge.

So we have this condition, the state asked the jury to
convict the defendants on the charge of assault and bat-
tery and the jury evidently in response to these instruc-
tions did that thing and convicted the defendants under
the assault and battery charge, and now the state by its
attorney-general says in effect that if that be true it "was
mere surplusage" thus abandoning the district attorney
and the trial court and arguing by the same process of
reasoning that the two instructions, one and two, were
surplusage, and this after conviction. We have then the
assault and battery charge surplusage and immaterial
matter and therefore should be disregarded when it comes
to passing upon the validity of the indictment and the
two instructions also surplusage. To our mind both prop-
ositions are wrong. If the assault and battery charge
should be disregarded in order to sustain the indictment,
then the case should be reversed because the instructions
one and two are wrong. If the instructions are correct
then the indictment is bad and the case should be reversed.

It is further contended by the attorney-general at brief
page 2 that the evidence of assault on Ethel Barrett was
properly admitted and he cites the rule found at page
637, 12 Corpus Juris. This statement of the rule as laid
down by Corpus Juris, is laid down as the general propo-
sition of law and certainly has its qualifications in that
the proposition cannot supplant the safeguards given to
all by the state constitution, section 22. In other words
if the collateral matters or collateral facts, which are the
substantial and essential evidence against the defendants
in another case under another indictment then pending
against them and in the same court, then the inhibition
of the constitution that no person shall be placed twice
in jeopardy for the same offense would forbid the intro-

duction of those facts in the instant case or in the other case when called for trial.

The constitution provides that any one charged with crime "has a right to demand the nature and cause of the accusations against him." This was intended to secure to the accused such a specific designation of the offense laid to his charge, as would enable him to make every preparation for his trial necessary to his full and complete defense and also such identification of the offense as that he might not be charged by the grand jury with one offense, and put on his trial for another, and so that after his conviction or acquittal, his subsequent protection might be insured, should he again be questioned about the same offense (1852) *Murphy* v. *State,* 24 Miss. 590, 1 Mor. St. Cas. 618; (1857) *Norris* v. *State,* 33 Miss. 373; 2 Mor. St. Cas. 1059.

By the second instruction the jury is told that if the jury believe from the evidence beyond a reasonable doubt that the defendants, or either of them, aided and abetted by their counsel, presence or active participation in the assault on Ellis Brooks as testified to by the witnesses then they are guilty as charged in the indictment and the jury shall so find." In other words, by these two instructions the jury is told that if King or Hoxie or any one of the defendants participated in the assault on Ella Brooks then the jury shall find all the defendants guilty. Although Shaw and Ford might have been innocent, still they all must be convicted because one of them was guilty. We insist the instructions are fatally erroneous for they did not leave to the jury to say which one of the defendants, whether one, two or three, were guilty and the other innocent. The jury had no choice under these instructions, they may have felt that one or two of the defendants were innocent, still the court had instructed them to convict all and the jury had to follow the court's instructions. All the instructions of the state were erroneous for the reasons above given if for no other cause.

In the case of *Isaacs et al.* v. *State*, 48 Miss. 234, this court held that where several defendants were indicted, tried and convicted jointly under a conspiracy charge, if there was not sufficient evidence against one of them and the verdict of conviction being against all the case must be reversed as to all and we again repeat the proof shows that they were not all guilty.

Each instruction is conclusive in itself and each instruction requires the jury to find all the defendants guilty without regard to the other two instructions. Can this court say the jury did not find that there was no conspiracy and found the defendants guilty of assault and battery? We are inclined to the belief that the jury found the defendants guilty of an assault, as we urged in our principal brief, as the state totally failed to prove conspiracy, and it may have proven that some of the parties made an assault. It were better that ninety-nine guilty escape than for one innocent man to be convicted. An old rule seems to have been reversed as evidently some of the innocent defendants were convicted, perhaps in order that one who might have been guilty would not escape.

We again respectfully submit that the case should be reversed and dismissed.

*Fred W. Lotterhos,* for appellee.

The indictment, in addition to charging conspiracy alleges that afterwards, in pursuance of the conspiracy the appellants assaulted and tarred the woman, the auxiliary very "did" being omitted from the charge of the actual assault. Because of this omission, the appellants invoked the rule given by the court in *Cook* v. *The State*, 72 Miss. 517, and followed by the court in a number of cases down to *Harron* v. *The State*, 79 So. 289.

These cases differ from the one at bar in that this involves a misdemeanor and the others were felony cases. Aside from this the charge of consummated assault is

mere surplusage and is immaterial here. At common law it was not necessary to charge or prove the accomplishment of the purpose of conspiracy, 12 C. J. 636.

In Mississippi and other states having the common law with no statute modifying the rule this principle prevails. The offense was complete when the conspiracy was made. *Laura* v. *The State*, 28 Miss. 174; *Isaacs* v. *The State*, 48 Miss. 234; *Smith* v. *The State*, 62 So. 575 (Ala.).

Additionally the appellants argue three of their assignments of error, to-wit: The admission of evidence of the assault of Ethel Barrett. Insufficiency of proof of conspiracy and the instructions given the state. As to these point the states maintains the following, as to the assault on Ethel Barrett:

This evidence was property admitted to show the design with which the alleged conspiracy was formed. Appellant Hoxie, in the presence of other men, told witness Harry Gray that they were going to attend to some negro women and if necessary they were going to tar and feather them and teach them a lesson and that there were two in particular in his neighborhood who wouldn't work. For some reason they didn't have to work and the country was at war and it was not time for anybody to be loafing. His wife had to saw wood, for the reason that one of these negro women wouldn't saw wood for him and the witness also stated that the defendant Shaw on the following night told witness what they had done and that they had attended to two of them, stating "they attended to them, they tarred and feathered them, it taught them a good lesson."

The appellant Hoxie testifies that they were out there to tell these women to go to work referring to Ella Brooks and the other woman, and went to regulate them and keep them from interfering with his labor, from this it appears that the purpose was to regulate both women and therefore it was permissible to show all acts done as evidence of the intent of conspiracy. The collateral fact of the assault of Ethel Barrett had some connection with the conspiracy to assault Ella Brooks and was induced by the same

motive. The rule found at page 637, 12 Corpus Juris, is as follows:

"Where the guilt of a party depends on the intent, purpose, or design with which an act is done, or on his guilty knowledge thereof, collateral facts in which he bore a principal part may be examined into for the purpose of establishing such guilty intent, design, purpose, or knowledge. It is sufficient that such collateral facts have some connection with each other as a part of the same plan or as induced by the same motive, and it is immaterial that they show the commission of other crimes. The evidence in a conspiracy is wider than perhaps in any other case. Taken by themselves, the acts of a conspiracy are rarely of an unequivocally guilty character, and they can only be properly estimated when connected with all surrounding circumstances." *Raines case,* 81 Miss. 489; Roscoe's Criminal Evidence (8 Ed.), p. 142; *Hampton* v. *The State,* 54 So. 722; *Cotton* v. *The State,* 17 So. 372; *Collier* v. *The State,* 108 Miss. 613 (619); Note 75 (A. & B.), 12 C. J. 637. The Collier case clearly recognizes the rule invoked by the state herein. This evidence was proper to show the character of the "regulation" intended to be inflicted on these two women. What the defendants intended to do is best shown by what they did. Here is an unusually clear proof of a conspiracy. See 12 C. J. 638.

The record shows that these appellants, upon the suggestion of appellant Hoxie, went to the dwelling house of these women in the middle of the night and, after unlawfully entering the house, caused Ella Brooks to partially disrobe for the purpose of tarring her and desisted before the actual application of the tar. It will be remembered that the witness Hoxie stated the intention was to use the tar only if necessary. It was likely deemed unnecessary in this instance after the conversation between the parties mentioned in the record. At the house of Ethel Barrett the procedure was the same except that she was dragged from the house and the defendants there deemed it necessary to apply the tar. It is plain that the appel-

lants combined for some purpose; what the purpose was is best shown by what the appellants did while acting in concert. The jury as the fellow citizens of these appellants heard this evidence, and, under their oaths, were convinced of the guilt of the defendants below, and it is respectfully submitted that the proof was abundant to justify such conclusion of a conspiracy, if the jury believed the evidence. *Street* v. *The State,* 43 Miss. 1; *Osborne* v. *The State,* 99 Miss. 410; *Peden* v. *The State,* 51 Miss. 267; *Lusk* v. *The State,* 64 Miss. 845; *Lamar* v. *The State,* 63 Miss. 265; *Ellzey* v. *The State,* 57 Miss. 827.

Instructions given for the state: The only criticism of these instructions would seem to be that they imposed a greater burden on the state than the law required it to carry in this trial. Proof of conspiracy was all that was incumbent on the state to produce. Such parts of said instructions as required the jury to find an assault on Ella may be disregarded. The jury were charged to find such an assault before conviction. Surely the appellants could not have been prejudicially affected by this. However, the state met this unnecessary requirement and did show an assault on Ella Brooks. The door and lock of her dwelling house were broken, the house entered and by putting her in fear she was caused to partially disrobe and the appellants were about to put tar on her body. There were present the present ability, the means, the preparation, the overt act and, so far as Ella could know, the intent to immediately commit the assault and battery. This assault is contradictedly shown by the record and, if the jury believed the evidence, they were warranted in finding an assault in addition to the conspiracy. 5 C. J. 718-723; *Lamar* v. *The State,* 57 Miss. 102.

These instructions in no way charged the jury to convict upon evidence of an assault on Ethel Barrett. These women under the law did not have to saw wood. The law afforded a remedy if the women were vagrants, a remedy which could be invoked in daylight in the court of the county. The proof is that the women were not insolent.

That one was in Vicksburg because of ill health and that
the other did do some work as a washwoman. It is contrary
to the spirit of our institutions that private parties take
into their own hands the regulation of those whose con-
duct may not be consistent with what such parties deem
the best interest of the community, and by means selected
by themselves force a course of conduct on such supposed
offenders different from what the law or the inclination
of the offending party requires to be done. The jury
heard the evidence and after an orderly trial of the case,
returned the verdict of guilty, which appeared to be reg-
ular to the court and accordingly sentence was imposed.
Wherefore that the judgment of the court below should
be affirmed is respectfully submitted.

SYKES, J., delivered the opinion of the court.

The appellants, four in number, were indicted, tried, and
convicted in the circuit court of Warren county, and each
sentenced to pay a fine and be imprisoned in the county
jail for a period of six months, from which judgment this
appeal is prosecuted.

Omitting the formal parts, the indictment against these
appellants is in the following words:

That they "did unlawfully conspire, combine, and con-
federate together to make an assault upon and smear tar
upon the body of one Ella Brooks, and afterwards, in
pursuance of the said unlawful conspiracy and combina-
tion, and then and there unlawfully assault and place tar
on the person and body of one Ella Brooks, a human
being," etc.

Without entering into a discussion of the testimony, it
is sufficient to say that from it the jury was justified in
believing that these people entered into a conspiracy in
violation of section 1084, Code of 1906 (Hemingway's
Code, section 810). By its testimony the state not only
proved that the appellants assaulted Ella Brooks, in her
home, but further proved over the objection of appellants
that they proceeded at once from the home of Ella Brooks

and committed an assault upon another negro woman named Ethel Barrett. A negro man, who occupied a room in the same house with Ella Brooks, testified that this crowd, after committing the assault upon Ella Brooks, compelled him to show them the house of Ethel Barrett. He identified the defendants as being in the crowd who made him point out to them the house of Ethel Barrett. Ethel Barrett testified as to the assault upon her, and identified the appellants as being in the crowd.

The state obtained instructions authorizing the jury to convict the appellants of a conspiracy, and also an instruction authorizing them to convict of an assault and battery. The indictment in this case is one for conspiracy and not for an assault and battery. Under section 1084 of the Code the conspiracy to commit a crime, or to accomplish any unlawful purpose, or lawful purpose by any unlawful means, is a complete and separate offense. *Laura* v. *State*, 26 Miss. 174; *Isaacs* v. *State*, 48 Miss. 234. Under this section it is not necessary to charge or prove the overt act; that is to say, that the conspiracy was in fact carried out, or attempted to be carried out. While the indictment in this case only charges a conspiracy directed against Ella Brooks, the testimony for the state was to the effect that the appellants intended "to attend to some negro women, and, if necessary, they were going to tar and feather them, and teach them a lesson." The testimony as to the assault upon Ethel Barrett was evidence of the fact that the conspiracy was not only formed, but was carried out.

"Where the guilt of a party depends on the intent, purpose, or design with which an act is done, or on his guilty knowledge thereof, collateral facts in which he bore a principal part may be examined into, for the purpose of establishing such guilty intent, design, purpose, or knowledge. It is sufficient that such collateral facts have some connection with each other, as a part of the same plan, or as induced by the same motive, and it is immaterial that they show the commission of other crimes. The evidence

in a conspiracy is wider than perhaps in any other case. Taken by themselves, the acts of a conspiracy are rarely of an unequivocally guilty character, and they can only be properly estimated when connected with all the surrounding circumstances." 12 C. J. 637.

See, also, 5 R. C. L. pp. 1087-1088; Raines v. State, 81 Miss. 489, 33 So. 19; *Collier* v. *State,* 106 Miss. 613, 64 So. 373.

The testimony in this case shows a conspiracy to commit an unlawful act upon at least two women, and the testimony showing the commission of these assaults was therefore admissible as tending to show the conspiracy. What they actually did in this case is evidence of what they intended to do.

Whether or not these defendants were convicted of an assault and battery, or a conspiracy, cannot be determined from this record. It was error to give the state an instruction authorizing the jury to find them guilty of an assault and battery, and for this error the judgment of the lower court is reversed, and the cause remanded.

*Reversed and remanded.*