338 So.2d 1239 (1976)
Ned VARNADO, Jr.
v.
STATE of Mississippi.
No. 49353.
Supreme Court of Mississippi.
November 9, 1976.
*1240 Robert S. Reeves, McComb, for appellant.
A.F. Summer, Atty. Gen., by Ben H. Walley, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, SUGG and WALKER, JJ.
PATTERSON, Presiding Justice, for the Court:
Ned Varnado, Jr. was convicted of murder by the Circuit Court of Pike County and sentenced to life imprisonment.
In the early hours of September 13, 1975, Varnado, the appellant, went to the White Castle, a combination hotel and cafe near McComb, Mississippi. He there encountered Monroe Barnes who challenged him to a game of dice by placing a bill on the pool table and stating: "I'm shooting $5.00." Varnado accepted by placing $5.00 on the table.
The first roll of the dice resulted in a winning "seven" for Barnes. The numerical combination was "six-ace." Barnes removed one of the bills and exclaimed, "Shooting for five!" Varnado placed another $5.00 bill on the table. Again Barnes rolled a winning "six-ace." This transaction was repeated a third time and Barnes won with a natural "six-ace." Undaunted, Varnado placed his last $5.00 on the table and when Barnes' fourth roll of the dice resulted in another winning "six-ace," Varnado, now suspicious, reached for the dice. Barnes snatched them away, evoking Varnado's comment, "I'm fading you and I can't look at the dice?" Barnes once more refused inspection, offering no explanation except he would cut Varnado's guts out if he again tried to get the dice. Barnes then departed the room with his gambling gains.
Varnado left the White Castle, walked to his automobile, obtained a shotgun and returned to the poolroom searching for Barnes. He was met by a friend, "Hop" Bates, who grasped the gun and persuaded Varnado to abandon the venture. However, as Varnado was departing the poolroom he heard Barnes cry out from the kitchen, "You've got the (expletive deleted), use it!" His attention thus directed, Varnado observed Barnes standing in a doorway between the kitchen and a hall with one hand in his pocket. Varnado moved directly toward Barnes who turned to retreat. When he did so, Varnado struck him across the shoulder with the gun. The gun discharged, a number of pellets striking Barnes' head behind his left ear. He later died from these wounds.
The appellant assigns as error the trial court's refusal to sustain a demurrer to the indictment. The demurrer's theory is that the indictment was drawn under Mississippi Code Annotated section 97-3-19 (1972) entitled *1241 "Homicide  murder defined  capital murder" and lacks requisite specificity because it failed to apprise him of whether he was charged under subsection (1) pertaining to murder, and if so, the manner in which such occurred, or whether he was charged under subsection (2) of the section defining capital murder. He further contends that an acquittal under the murder indictment would not protect him from a subsequent charge of capital murder in contravention of his rights under the Fifth and Sixth Amendments to the United States Constitution as well as Article 3, Section 26, of the Mississippi Constitution (1890).
Mississippi Code Annotated section 99-17-20 (1972) provides in relevant part:
No person shall be tried for capital murder, or any other crime punishable by death as provided by law, unless such offense was specifically cited in the indictment returned against the accused by setting forth the section and subsection number of the Code defining the offense alleged to have been committed by the accused ... Any conviction of the accused for an offense punishable by death shall not be valid unless the offense for which the accused is convicted shall have been set forth in the indictment by section and subsection number of the Code which define the offense allegedly committed by the accused.
The indictment cited neither Section 97-3-19 nor subsection (2) thereof relating to capital murder. It is therefore obvious that Varnado could only have been charged with and convicted of murder under subsection (1). Moreover, the indictment is in conformity with Mississippi Code Annotated section 99-7-37 (1972) which provides, among other things, the following:
In an indictment for homicide it shall not be necessary to set forth the manner in which or the means by which the death of the deceased was caused, but it shall be sufficient to charge in an indictment for murder, that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased.
It meets the standard of the statute which was approved in Sessum v. State, 221 So.2d 368 (Miss. 1969). Moreover, we are of the further opinion that the appellant is amply protected against future prosecutions for capital murder by the constitutional prohibitions against double jeopardy as well as the doctrine of collateral estoppel. We therefore conclude the demurrer was properly overruled.
The appellant next contends the indictment is defective because it contains prejudicial language consisting of the term "murder" when the appellant could only be guilty of manslaughter. We are not persuaded and again cite Sessum, supra, as dispositive of the issue.
The next argument is that the trial court erred in admitting the testimony of Dr. Richardson, a pathologist because he was not on the list of original witnesses proposed to be offered by the state.
The indictment was returned on Monday, October 6, at which time an order to disclose the names of witnesses was entered by the court. On Friday, October 10, the cause was set down for trial on Tuesday, October 21, and witnesses' names were then made available to the defense. On Thursday, October 16, it became known that Dr. Richardson would be used to replace a designated witness who had been excused because of a prior commitment. This fact was promptly communicated to the defendant.
The record fails to disclose any prejudice violative of due process in using this witness. Rather it indicates that upon learning of the substitution, necessary under the circumstances, the state advised the appellant and the defendant did interview the doctor prior to his being called as a witness. The trial judge found that the defendant's rights were fully protected and overruled the objection to this witness' testimony. We are unable to detect any harm to the defendant from the use of this witness and surely we cannot state the trial court abused its discretion in permitting the pathologist to testify. Armstrong v. State, 214 So.2d 589 (Miss. 1968).
*1242 Complaint is made of the court's refusal of certain instructions requested by the defendant appertaining to his right of self-defense and protection of property. We think this argument is without merit. The instructions do not advise the jury to find support in the evidence for the hypotheses therein expressed, but rather to accept what has been asserted by the defendant as true, a usurpation of that body's function. We are of the opinion the instructions were properly refused and moreover, a review of all of the instructions clearly discloses that the jury was amply instructed on the law of the case.
It is appellant's belief that the verdict of the jury was against the overwhelming weight of the evidence. It is urged that his actions indicate a lack of intention to kill, at most evidencing only that he intended to strike Barnes in self-defense with the gun as a club. In support of this premise the argument is advanced that had appellant desired to shoot Barnes, he could have done so from across the room, thus demonstrating a lack of intention to kill.
However, the record is replete with evidence supporting a death from malice aforethought such as the frustrations and anger of the dice game, departure to obtain a gun, the return and search for the decedent, his advance toward Barnes immediately before striking him and the discharge of the weapon. These facts were before the jury for its consideration and resolution. In our opinion the verdict is supported by the evidence and we cannot disturb it on appeal. McLelland v. State, 204 So.2d 158 (Miss. 1967).
Lastly, Varnado assigns as error his commitment to the penitentiary pending this appeal. Essentially, his argument is that his appeal "in forma pauperis" pursuant to Mississippi Code Annotated section 99-35-105 (1972) prevented his incarceration prior to the judgment of this Court. Section 99-35-105 provides in part:
[I]f the appellant shall make affidavit that he is unable to give an appeal-bond, and unable to deposit a sufficient sum of money to cover costs, he shall have an appeal without bond or deposit for costs; and his appeal shall stay the judgment appealed from.
This Court has held many times that when two statutes seek to regulate the same subject matter, the statute dealing with the matter specifically controls over that relating to it generally. McCaffrey's Food Market, Inc. v. Mississippi Milk Comm'n, 227 So.2d 459 (Miss. 1969). Section 99-35-115, entitled "Bail after conviction of felony," specifically provides that:
A person convicted of ... murder ... shall not be entitled to be released from imprisonment pending an appeal to the supreme court, unless it be so ordered by the court in which conviction is had, or by the supreme court, or by the judge who presided at the conviction, or the judge of the district in which conviction was had, or a judge of the supreme court in vacation of said court; and the making of such order shall be a matter of discretion with either the court or judge to be exercised with the greatest caution, and only when the peculiar circumstances of the case render it proper. A person convicted of any felony other than those enumerated in the foregoing paragraph shall be entitled to be released from imprisonment on bail pending an appeal to the supreme court.
The record does not contain an order to stay the verdict and judgment on appeal. Since this is so, we find no merit in this contention. In reaching this conclusion we note that no argument was made under the provisions of Mississippi Code Annotated section 99-19-39 or 99-19-41 (1972) or Lang v. State, 230 Miss. 147, 89 So.2d 837 (1956), directing that a prisoner be retained in jail, not the penitentiary, pending appeal.
Our study reveals ample evidence to support the appellant's conviction and since he received a fair trial in accord with our procedure, the case will be affirmed.
AFFIRMED.
GILLESPIE, C.J., INZER, P.J., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.